FLOOR CRAFT FLOOR COVERING, INC., APPELLANT, *v.* PARMA COMMUNITY
GENERAL HOSPITAL ASSOCIATION ET AL., APPELLEES.

[Cite as Floor Craft Floor Covering, Inc. *v.* Parma Community Gen. Hosp. Assn.
(1990), 54 Ohio St. 3d 1.]

(Nos. 89-1044 and 89-1045—Submitted May 30, 1990—
Decided September 19, 1990.)

Zellmer & Gruber, Jeffrey P. Posner and John M. Manos, for appellant.

Cassidy & Mottl and Kevin P. Weiler, for appellee Parma Community General Hospital.

Gallagher, Sharp, Fulton & Norman and Robert H. Eddy, for appellee Braun & Spice, Inc.

HOLMES, J. The key issue presented in this case is whether a contractor may sue an architect for economic injury in the absence of privity of contract between the parties. For the reasons which follow we answer such query in the negative.

In the absence of privity of contract between two disputing parties the general rule is "there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." Prosser & Keeton, Law of Torts (5 Ed. 1984) 657, Section 92. In addressing the propriety of economic damages arising from a products liability claim this court in Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co. (1989), 42 Ohio St. 3d 40, 44-45, 537 N.E. 2d 624, 630, noted:

"For actions sounding in negligence, '[t]he well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.' Nebraska InnKeepers, Inc. v. Pittsburgh-Des Moines Corp. (Iowa 1984), 345 N.W. 2d 124, 126. Accord Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern (1982), 98 Nev. 409, 410-411, 651 P. 2d 637, 638. See, also, Note, Economic Loss [in Products Liability Jurisprudence (1966), 66 Colum. L. Rev. 917,] * * * 929 (noting that '[n]egligence has proved to be among the least fruitful avenues for recovery of economic loss')."

This court has not previously addressed this issue of the right of contractors to recover economic damages where design professionals have allegedly drafted defective plans and specifications. In a general review of the case law on this subject, including some of our Ohio appellate court decisions, we conclude that tort liability may not be imposed for purely economic damages. In L.R. Patrick, Inc. v. Karlsberger & Assoc. (Dec. 27, 1983), Franklin App. No. 82AP-1008, unreported,[2] the court of appeals found that architects and engineers could be held accountable for negligence in the preparation of plans and specifications and design of the construction upon which a contractor relies to its detriment. The L.R. Patrick, Inc. court relied on this court's decision in Haddon View Investment Co. v. Coopers & Lybrand (1982), 70 Ohio St. 2d 154, 24 O.O. 3d 268, 436 N.E. 2d 212. In Haddon View this court held that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." Id. at syllabus. In Haddon View the plaintiffs were in-

---

[2] The other case asserted to be in conflict with the appellate court decision below, Connolly Constr., supra, allowed a contractor to maintain a negligence action against the architect where no privity of contract existed based in part on this court's reasoning in Haddon View, supra (which is distinguishable on its facts and the law as discussed, infra, in this opinion).

dividual, limited partners who detrimentally relied upon representations the accounting firm made to its client, the limited partnership. The *Haddon View* court only partially withdrew the privity requirement with respect to malpractice actions taken against accountants.

As the court of appeals in this case correctly recognized, *Haddon View* is not dispositive of the issue before us. In *Columbus City School Dist. Bd. of Edn.* v. *Fry, Inc.* (1984), 22 Ohio App. 3d 94, 95, 22 OBR 281, 283, 489 N.E. 2d 294, 296, the court of appeals was faced with an analogous situation to the one presented here. In *Fry,* a contractor which installed a roof on a school was sued by the school board for damages resulting from allegedly defective work. The roofing contractor filed a third-party action against the architect that prepared the plans and specifications for the roof. The contractor claimed that the architect negligently prepared the plans and specifications. The *Fry* court held:

"Presumably, [the contractor] is proceeding upon a theory similar to that of *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154 [24 O.O. 3d 268]. However, assuming that the principle of *Haddon View* applies to [architects and] engineers as well as accountants, the fact situation here differs substantially in that Fry [the contractor] does not seek an independent recovery against Lawrence [the architect], but, instead, seeks only indemnification from Lawrence for any liability that Fry may have to plaintiff board because of negligent design by Lawrence. No such liability can exist in this case. Plaintiff board, in contracting with Fry for the construction of the Linden Park building, adopted the specifications of the architect, Lawrence; hence, if Fry complied with the specifications so fur-

nished, it cannot be found to be in breach of its contract with plaintiff board. In short, there [is] no set of circumstances under which the liability of Fry to plaintiff board could be predicated upon the negligence of Lawrence in designing the building. Accordingly, the trial court did not err in sustaining third-party defendant Lawrence's motion to dismiss."

To arrive at the more correct result, we look to the analysis given this issue by other jurisdictions. In *Blake Constr. Co.* v. *Alley* (1987), 233 Va. 31, 353 S.E. 2d 724, the Supreme Court of Virginia held that the Virginia statute which allows for actions in negligence for damage to persons or property in the absence of privity is in derogation of the common law and, therefore, must be strictly construed. The court recognized that "[u]nder the common law there could be no recovery by * * * [the contractor] from * * * [the architectural firm] in tort for only economic loss in the absence of privity.* * *" *Id.* at 36, 353 S.E. 2d at 727. The court concluded *inter alia* that:

"The architect's duties both to owner and contractor arise from and are governed by the contracts related to the construction project. While such a duty may be imposed by contract, no common-law duty requires an architect to protect the contractor from purely economic loss. * * *

"* * *

"* * * Protection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain. Any duty on the architect in this regard is purely a creature of contract. * * * " *Id.* at 34-35, 353 S.E. 2d at 726-727. See, also, *Bryant Elec. Co.* v. *Fredericksburg* (C.A.4, 1985), 762 F. 2d 1192 (no cause of action in tort exists under

Virginia law for a contractor to recover against architectural and engineering firm for economic loss in the absence of privity); *McKinney Drilling Co.* v. *Nello L. Teer Co.* (1978), 38 N.C. App. 472, 248 S.E. 2d 444 (court observed that cases finding liability for negligent performance of contractual duty in absence of privity of contract were limited to actions for personal injury or property damage; no North Carolina precedent found for allowing recovery for loss of profits by third party as result of negligent breach of contract); *Florida Power & Light Co.* v. *Westinghouse Elec. Corp.* (Fla. 1987), 510 So. 2d 899; *R.H. Macy & Co., Inc.* v. *Williams Tile & Terrazzo Co.* (N.D. Ga. 1984), 585 F. Supp. 175; *R.J. Reagan Co.* v. *Kent* (Tex. Civ. App. 1983), 654 S.W. 2d 532; *State, ex rel. Smith,* v. *Tyonek Timber, Inc.* (Alaska 1984), 680 P. 2d 1148; but, see, *A.R. Moyer, Inc.* v. *Graham* (Fla. 1973), 285 So. 2d 397, where the Supreme Court of Florida accepted a case certified by the United States Court of Appeals, Fifth Circuit, concerning whether a general contractor could maintain a direct action against the supervising architect for the general contractor's damages proximately caused by the negligence of the architect in the absence of privity between the parties. The *Moyer* court noted, under the abbreviated facts on certification, that since the supervising architect wielded excessive control over the contractor, a consequent duty arose on the part of the architect " 'to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.' " *Id.* at 401, quoting *United States* v. *Rogers &*

*Rogers* (S.D. Cal. 1958), 161 F. Supp. 132, 136; see, generally, *Donnelly Constr. Co.* v. *Oberg/Hunt/Gilleland* (1984), 139 Ariz. 184, 677 P. 2d 1292; *Milton J. Womack, Inc.* v. *State House of Representatives* (La. App. 1987), 509 So. 2d 62, certiorari denied (1987), 513 So. 2d 1208; *Owen* v. *Dodd* (D.C. Miss. 1977), 431 F. Supp. 1239 (applying Mississippi law); *Columbus* v. *Clark-Dietz & Assoc.-Eng., Inc.* (N.D. Miss. 1982), 550 F. Supp. 610, appeal denied (C.A. 5, 1983), 702 F. 2d 67 (applying Mississippi law); *Davidson & Jones, Inc.* v. *New Hanover* (1979), 41 N.C. App. 661, 255 S.E. 2d 580, certiorari denied (1979), 259 S.E. 2d 911; *Berkel & Co. Contractors, Inc.* v. *Providence Hosp.* (Ala. 1984), 454 So. 2d 496.

In *Widett* v. *U.S. Fid. & Guar. Co.* (C.A.2, 1987), 815 F. 2d 885, 886-887, a case arising in a state without a pertinent statute on the issue, as is the situation in Ohio, the Second Circuit Court of Appeals decided that under New York law a subcontractor could not maintain a negligence action against an architectural firm which prepared plans and specifications for a project as there was no contractual relationship between the architect and subcontractor. The *Widett* court stated: "[I]t is well settled in New York * * * that professionals are not liable either in tort or contract absent privity." *Id.* at 886. In distinguishing cases where accountants were held liable to limited partners for negligent preparation of financial statements, the *Widett* court explained that despite the absence of a direct contractual relationship there was a sufficient nexus between the parties to permit an action by the individual, limited partners against the accountant. The contract between the limited partnership and the accountant rendered the beneficiaries both identifiable and fixed in number. *Id.* " 'Here, the services of

the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit.' " *Id.,* quoting *White* v. *Guarente* (1977), 43 N.Y. 2d 356, 361, 401 N.Y. Supp. 2d 474, 477, 372 N.E. 2d 315, 318. Since the decision in *White* v. *Guarente, supra,* the New York Court of Appeals has affirmed the dismissal of other subcontractor claims against architects. See *Alvord & Swift* v. *Stewart M. Miller Constr. Co.* (1978), 46 N.Y. 2d 276, 413 N.Y. Supp. 2d 309, 385 N.E. 2d 1238; *Underhill Constr. Corp.* v. *New York Telephone Co.* (1978), 56 App. Div. 2d 760, 391 N.Y. Supp. 2d 1000, affirmed (1978), 44 N.Y. 2d 666, 405 N.Y. Supp. 2d 40, 376 N.E. 2d 201. The *Widett* court pointed out with respect to *Alvord* and *Underhill* that, "[i]n both cases, no direct contractual relationship existed between the subcontractor and the architect. The subcontractor contracted only with the general contractor; the architect contracted only with the owner. In neither case was a sufficient nexus found between the subcontractors and the architect that could serve as a substitute for contractual privity." *Id.* at 887; see, also, *Ramey Constr. Co.* v. *Apache Tribe of Mescalero Reservation* (C.A.10, 1982), 673 F. 2d 315 (negligence action by contractor against architect, trial court held to have properly determined that architect was not liable for damages caused by failure to manage and coordinate construction project, where the architect's duties under the contract were limited primarily to " 'surveillance of project construction to assure compliance with plans, specifications and other contract documents,' " *id.* at 321, and there was no provision that architect undertake responsibility for project management); *Bates & Rogers Constr. Corp.* v. *North Shore Sanitary Dist.* (1984), 128 Ill. App. 3d 962, 471 N.E. 2d 915, affirmed (1985), 109 Ill. 2d 225, 486 N.E. 2d 902.

Floor Craft requests that this court adopt the Restatement of the Law 2d, Torts (1977) 126-127, Section 552,[3] with respect to economic injury suffered by third parties not in privity with design professionals. Floor Craft relies on our prior decision in *Haddon View, supra,* for support. This court held in *Haddon View, supra,* at the syllabus, that "[a]n accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." As noted previously in this opinion there is generally no nexus found between subcontractors (in this case a flooring contractor) and architects that can serve as a substitute for contractual privity.

---

[3] The Restatement of the Law 2d, Torts (1977) 126-127, Section 552, provides in pertinent part:

"(1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

See *Widett, supra.* Although architects may anticipate that certain subcontractors will contribute to a construction project, the architects' services are generally extended to an unresolved class of persons unfixed in number.

As the Supreme Court of Virginia stated in *Sensenbrenner* v. *Rust, Orling & Neale* (1988), 236 Va. 419, 425, 374 S.E. 2d 55, 58:

"The law of torts is well equipped to offer redress for losses suffered by reason of a 'breach of some duty imposed by law to protect the broad interests of social policy.' *Kamlar [Corp. v. Haley* (1983)], 224 Va. [699], at 706, 299 S.E. 2d [514] at 517. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts. * * *

"The controlling policy consideration underlying tort law is the safety of persons and property — the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on the one hand and economic losses on the other."

Therefore, applying the Restatement in this context will encompass liability that is otherwise best suited for contract negotiation and assignment.

The circumstances of *Bryant Elec. Co., supra,* and *Bates & Rogers Constr. Corp., supra,* illustrate why the economic loss rule should be applied to bar tort recovery in construction contract cases. One reason for applying the rule is to hold parties to their contracts. In *Bryant Elec. Co.,* Bryant's contract with the city provided that the Circuit Court for the city of Fredericksburg would be the only forum available to the parties. If the Fourth Circuit Court of Appeals had permitted Bryant to maintain a negligence claim against the architect, the case would have been tried in United States District Court, thereby avoiding the strict forum-selection clause in the contract between the parties. And, in *Bates & Rogers Constr. Corp.,* the contractor's agreement with the owner contained a "no damage for delay clause" as well as other potential limitations on damages. By asserting a tort claim, Bates & Rogers Construction may have tried to avoid its contract terms. Similarly, in the present case, Floor Craft contracted with the owner Parma Hospital (not the architect) to hold Parma Hospital and not the project architect liable for any economic damages arising from the plans and specifications.[4]

---

[4] The A.I.A. contract between Parma Hospital and Floor Craft contains several provisions which explicitly served to shield the project architect, Braun & Spice, from liability. For example, Section 1.1.2 rejects the notion of a special duty of care going from Braun & Spice to Floor Craft. It states in part:

"*The Contract Documents shall not be construed to create any contractual relationship of any kind between the Architect and the Contractor,* between the Construction Manager and the Contractor or between the Architect and the Construction Manager, but the Architect and the Construction Manager shall be entitled to per-

In applying the legal philosophy of these latter cases, we conclude that recovery for economic loss is strictly a subject for contract negotiation and assignment. Consequently, in the absence of privity of contract no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications.

In the case *sub judice* there was no direct contractual relationship between Floor Craft (the contractor) and Braun & Spice (the architect). Floor Craft contracted directly with the owner Parma Hospital. There is no nexus here that can serve as a substitute for contractual privity. Therefore, since there was no privity of contract between Floor Craft and Braun & Spice, the court of appeals properly affirmed the trial court's dismissal for failure to state a cause of action.

Further, we hold that the issue presented by both Floor Craft and Parma Hospital concerning the construction given to the arbitration clause in their agreement is moot and not properly before us for purposes of this appeal.[5]

---

formance of the obligations of the Contractor intended for the benefit and to enforcement thereof. * * *'' (Emphasis added.)

Further, under Section 2.3.5, the architect is not responsible for any construction methods or procedures used by the contractor or for the contractor's failure to carry out work in accordance with the plans and specifications. Section 2.3.5 provides in pertinent part:

"Neither the Architect nor the Construction Manager will be responsible for or have control or charge of construction means, methods, techniques, sequences or procedures, or the safety precautions and programs in connection with the work, and neither will be responsible for the contractor's failure to carry out the work in accordance with the Contract Documents.''

Also, under Section 2.3.16, "neither the Architect's nor the Construction Manager's authority to act under this Subparagraph 2.3.16, nor any decision made by them in good faith either to exercise or not exercise such authority [the architect was authorized to reject any of Floor Craft's work that did not conform to the contract documents] shall give rise to any duty or responsibility of the Architect or the Construction Manager to the Contractor performing any of the work.''

Finally, at arbitration, if Floor Craft can demonstrate that it followed the plans and specifications provided by Braun & Spice, but nevertheless a defective result ensued because of the deficiency of the plans, then Floor Craft would not be held liable for the costs associated with the additional work. As stated in Section 4.2.1 of the A.I.A. contract, in relevant part:

"The Contractor shall not be liable to the Owner, the Architect or the Construction Manager for any damage resulting from any such errors, inconsistencies or omissions in the Contract Documents.''

[5] The journal entry and judgment of the court of appeals as to Floor Craft, Parma Hospital and Braun & Spice were announced on March 16, 1989. An application for reconsideration by Floor Craft was denied on April 17, 1989. Floor Craft then filed a motion for certification which was granted as to the architect liability issue on May 31, 1989. On July 19, 1989, this court granted a motion to certify the record and a claimed appeal as of right (case No. 89-1045) as to the issue of architect liability. Absent from the record is any request for jurisdiction on the arbitration issue by Floor Craft or Parma Hospital. Instead, Parma Hospital brought separate motions for summary judgment in the Cuyahoga County Common Pleas Court (case Nos. 126208 and 148810) pursuant to the remand for a stay pending arbitration from the court of appeals' March 16, 1989 decision. The common pleas court granted summary judgment on August 18, 1989 in favor of Parma Hospital on the arbitration issue.

Clearly, this court never had jurisdiction over the arbitration issue which was

Accordingly, the judgment of the court of appeals as to the issue on certification is affirmed.

*Judgment affirmed.*

MOYER, C.J., WRIGHT and RESNICK, JJ., concur.

SWEENEY, J., dissents without opinion.

DOUGLAS and H. BROWN, JJ., dissent.

H. BROWN, J., dissenting. I must respectfully dissent from the majority's application of the privity doctrine to bar Floor Craft Floor Covering, Inc.'s action against Braun & Spice, Inc.

The privity doctrine, which at one time made a contractual relationship a prerequisite for tort recovery, was accidentally created in an ancient English opinion, *Winterbottom* v. *Wright* (Ex. 1842), 10 M. & W. 109, 152 Eng. Rep. 402. *Winterbottom* held that a driver injured in a mail coach accident could not sue the contractor hired to maintain the coach for breach of the maintenance contract. *Id.* at 113-115, 152 Eng. Rep. at 404-405. As a matter of *contract* law, this was a sound result. Unfortunately, some of the judges' *dicta* were misread as a holding that in the absence of privity no suit could be maintained in *tort* for injuries caused by misperformance of a contractual duty. Prosser & Keeton, The Law of Torts (5 Ed. 1984) 668, Section 93 ("Prosser & Keeton").

This misinterpretation went uncorrected for years. The privity doctrine

insulated manufacturers from liability for the sale of defective products, see, *e.g., Huset* v. *J.I. Case Threshing Machine Co.* (C.A.8, 1903), 120 F. 865, and professionals from liability for malpractice, see, *e.g., Savings Bank* v. *Ward* (1879), 100 U.S. 195 (attorneys); *Ultramares Corp.* v. *Touche, Niven & Co.* (1931), 255 N.Y. 170, 174 N.E. 441 (accountants). Eventually, as courts throughout the nation realized that the privity doctrine was both bad tort law and bad social policy, the doctrine was given its well-deserved burial. See, generally, Prosser, The Assault Upon the Citadel (1960), 69 Yale L.J. 1099; Prosser, The Fall of the Citadel (1966), 50 Minn. L. Rev. 791.

At one time, this court took its place among the rest of the common-law world in laying the privity doctrine to rest (as applied to actions sounding in tort). *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244, 4 O.O. 2d 291, 147 N.E. 2d 612 (products liability); *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267 (same); *Shaweker* v. *Spinell* (1932), 125 Ohio St. 423, 181 N.E. 896 (medical malpractice); *Haddon View Investment Co.* v. *Coopers & Lybrand* (1982), 70 Ohio St. 2d 154, 24 O.O. 3d 268, 436 N.E. 2d 212 (accountant malpractice); see, also, *Sedar* v. *Knowlton Constr. Co.* (1990), 49 Ohio St. 3d 193, 199, 551 N.E. 2d 938, 945 (noting "the general demise of the privity requirement"); *Kocisko* v. *Charles Shutrump & Sons Co.* (1986), 21 Ohio St. 3d 98, 101, 21 OBR 392, 394, 488 N.E. 2d 171, 174 (Wright, J., dissenting) (same). Unfortunately, this is no longer the case.

In *Simon* v. *Zipperstein* (1987), 32

---

properly before the common pleas court. This court only accepted jurisdiction and allowed the appeal as of right on issues *common* to the architect liability question as

reflected in the motion for certification. Therefore, we observe that the arbitration issue is moot and cannot be resurrected for purposes of this appeal.

Ohio St. 3d 74, 512 N.E. 2d 636, a majority of this court exhumed and reanimated the privity doctrine, applying it to safeguard lawyers from malpractice claims. The *Simon* majority employed the absence of contractual privity to bar the intended beneficiaries of negligently drafted wills from suing the drafting attorney for legal malpractice. This was justified as necessary to shield the attorney-client relationship from conflicts of interest, a rationale which was shaky at best.[6]

In the instant case, the majority employs an equally unsound rationale to justify its latest application of the privity doctrine. The majority declares that it is a "general rule" that absent privity of contract one may not recover in negligence for economic loss.

This has never been the law of Ohio. Indeed, we have previously held, in a different context, that purely economic losses *can* be recovered in negligence by one not in privity with the tortfeasor. In *Haddon View, supra,* we held that accountants may be liable for professional negligence, in the absence of privity, to persons whose reliance on the accountants' work product is reasonably foreseeable. The majority acknowledges the existence of *Haddon View,* but asserts (in a footnote) that it is distinguishable, with no explanation of the distinction.[7] It appears that the majority has "distinguished" *Haddon View* on the ground that *Haddon View* concerned accountants accused of malpractice which caused economic loss to a foreseeable plaintiff, while the instant case concerns architects accused of malpractice which caused economic loss to a foreseeable plaintiff. This is not a legally — or logically — significant distinction.

In support of its argument, the majority cites *Chemtrol Adhesives, Inc.* v. *American Mfrs. Mut. Ins. Co.* (1989), 42 Ohio St. 3d 40, 537 N.E. 2d 624. In

---

[6] All but one of the Ohio cases cited by the *Simon* majority in support of its position involved suits for "attorney malpractice" or "malicious prosecution" against attorneys who had represented a third party in prior litigation. As one commentator observed:

"* * * Providing some sort of immunity to attorneys from suits by non-clients makes sense in these situations. Not only would permitting claims against the attorney create conflicts of interest, it might well provide an avenue for revenge or harassment by an opposing party.

"While * * * [this] policy makes sense in an adversarial context, it has no application where the attorney is employed to draft a will. In the will-preparation transaction, the interests of the client-testator and the named testamentary beneficiary are essentially congruent with respect to the attorney's performance. Both desire that the attorney draft an instrument which effectively transmits wealth from the client-testator's estate to the beneficiary. It is impossible to see how, in competently drafting a will in favor of the named beneficiary, the attorney might be subjected to a conflict of interest due to fear of later liability to the beneficiary. * * *" (Footnotes omitted.) Note, Privity as a Bar to Recovery in Negligent Will-Preparation Cases: a Rule Without a Reason (1989), 57 U. Cin. L. Rev. 1123, 1136-1137; see, also, Note, The Negligent Drafting of Wills and *Simon v. Zipperstein*: a Step Backward in Ohio Jurisprudence? (1988), 20 U. Tol. L. Rev. 133.

[7] The majority quotes from *Columbus City School Dist. Bd. of Edn.* v. *Fry, Inc.* (1984), 22 Ohio App. 3d 94, 22 OBR 281, 489 N.E. 2d 294, in this part of its discussion. The *Fry* court found a distinction between *Fry* and *Haddon View* because *Fry* was an indemnity claim, while *Haddon View* was not. I am not sure that this is a meaningful distinction; even if it were, *Fry* is inapposite because the case before us does not involve an indemnity claim.

*Chemtrol,* a manufacturer of self-adhesive labels brought an action to recover damages caused by a defective piece of industrial equipment. We held that, where there is no claim for personal injuries or property damage caused by defective goods, tort theories may not be used as a substitute for UCC Article 2 warranties. This is because *"where the buyer and seller are in privity of contract,* and they have negotiated that contract from relatively equal bargaining positions, the parties are able to allocate the risk of all loss" through their con-

tract. (Emphasis added.) *Id.* at 46, 537 N.E. 2d at 631. *Chemtrol* has nothing to do with the recovery of damages where the parties involved are not in privity of contract.

The majority further attempts to bolster its position by examining "the analysis given this issue by other jurisdictions." In at least twenty-one of our sister states, courts have held that the absence of contractual privity does not shield design professionals from liability for malpractice which causes economic loss.[8]

The majority brushes past this

---

[8] *Berkel & Co. Contractors, Inc.* v. *Providence Hosp.* (Ala. 1984), 454 So. 2d 496 (subcontractor may recover against architect); *Donnelly Constr. Co.* v. *Oberg/Hunt/Gilleland* (1984), 139 Ariz. 184, 677 P. 2d 1292 (contractor may recover against architect); *Carroll-Boone Water Dist.* v. *M. & P. Equip. Co.* (1983), 280 Ark. 560, 661 S.W. 2d 345 (contractor may recover against engineer); *United States, ex rel. Los Angeles Testing Laboratory,* v. *Rogers & Rogers* (S.D. Cal. 1958), 161 F. Supp. 132 (applying California law to pendent claim; contractor may recover against architect); *Seiler* v. *Levitz Furniture Co.* (Del. 1976), 367 A. 2d 999 (tenant may recover against architect); *A.R. Moyer, Inc.* v. *Graham* (Fla. 1973), 285 So. 2d 397 (contractor may recover against architect or engineer); *Essex* v. *Ryan* (Ind. App. 1983), 446 N.E. 2d 368 (subsequent purchaser may recover against surveyor where surveyor has actual knowledge that purchaser would rely on survey); *Normoyle-Berg & Assoc., Inc.* v. *Deer Creek* (1976), 39 Ill. App. 3d 744, 350 N.E. 2d 559 (contractor may recover against engineer); *Gurtler, Hebert & Co.* v. *Weyland Machine Shop, Inc.* (La. App. 1981), 405 So. 2d 660, certiorari denied (La. 1982), 410 So. 2d 1130 (subcontractor may assert third-party claim against architect); *Craig* v. *Everett M. Brooks Co.* (1963), 351 Mass. 497, 222 N.E. 2d 752 (contractor may recover against engineer); *Council of Co-Owners Atlantis Condominium, Inc.* v. *Whiting-Turner*

*Contracting Co.* (1986), 308 Md. 18, 517 A. 2d 336 (condominium purchasers may recover against architect for cost of repairing structural defects which have not yet caused personal injury or property damage); *Bacco Constr. Co.* v. *American Colloid Co.* (1986), 148 Mich. App. 397, 384 N.W. 2d 427 (contractor may recover against engineer); *Owen* v. *Dodd* (N.D. Miss. 1977), 431 F. Supp. 1239 (applying Mississippi law; contractor may recover against architect); *Waldor Pump & Equipment Co.* v. *Orr-Schelen-Mayeron & Assoc.* (Minn. App. 1986), 386 N.W. 2d 375 (subcontractor may recover against engineer); *Conforti & Eisele, Inc.* v. *John C. Morris Assoc.* (1980), 175 N.J. Super. 341, 418 A. 2d 1290 (contractor may recover against design professional); *Ossining Union Free School Dist.* v. *Anderson LaRocca Anderson* (1989), 73 N.Y. 2d 417, 541 N.Y. Supp. 2d 335, 539 N.E. 2d 91 (owner may recover against consulting engineer); *Davidson & Jones, Inc.* v. *New Hanover* (1979), 41 N.C. App. 661, 255 S.E. 2d 580, certiorari denied (1979), 298 N.C. 295, 259 S.E. 2d 911 (contractor may recover against architect); *Forte Bros., Inc.* v. *National Amusements, Inc.* (R.I. 1987), 525 A. 2d 1301 (contractor may recover against architect); *Associated Architects & Engineers, Inc.* v. *Lubbock Glass & Mirror Co.* (Tex. Civ. App. 1967), 422 S.W. 2d 942 (subcontractor may recover against architect); *Detwiler Bros., Inc.* v. *John Graham & Co.* (E.D. Wash. 1976), 412 F. Supp. 416 (applying

wealth of authority and relies primarily on a federal diversity case which misconstrues New York law, *Widett* v. *U.S. Fid. & Guar. Co.* (C.A.2, 1987), 815 F. 2d 885, and two Virginia cases, *Blake Constr. Co.* v. *Alley* (1987), 233 Va. 31, 353 S.E. 2d 724, and *Sensenbrenner* v. *Rust, Orling & Neale* (1988), 236 Va. 419, 374 S.E. 2d 55, to provide a rationale for its resurrection of the privity doctrine. The majority's reliance is misplaced.[9]

In *Widett, supra,* the federal court held that New York continues to follow the privity doctrine. The *Widett* court was wrong. In *Ossining Union Free School Dist.* v. *Anderson LaRocca Anderson* (1989), 73 N.Y. 2d 417, 541 N.Y. Supp. 2d 335, 539 N.E. 2d 91, New York's highest court reversed the dismissal of a claim by a school district against a firm of consulting engineers, with which the district was not in privity, for the engineers' "negligent misrepresentation" of the structural condition of a building. The court stated that, while its earlier cases limited the class of persons who could recover, they had not "erected a citadel of privity for negligent misrepresentation suits." *Ossining, supra,* at 424, 541 N.Y. Supp. 2d at 338, 539 N.E. 2d at 94. The court also made it clear that the abrogation of the privity doctrine in New York does not treat accountants as a special class.

---

Washington law; subcontractor may recover against architect); *A.E. Investment Corp.* v. *Link Builders, Inc.* (1974), 62 Wis. 2d 479, 214 N.W. 2d 764 (tenant may recover against architect); see, also, *Cosmopolitan Homes, Inc.* v. *Weller* (Colo. 1983), 663 P. 2d 1041 (subsequent purchaser may recover against builder of home for design and construction defects).

[9] The other authorities cited by the majority are not on point.

In *Ramey Constr. Co.* v. *Apache Tribe of Mescalero Reservation* (C.A.10, 1982), 673 F. 2d 315, the federal circuit court of appeals held that the trial court properly determined that the defendant architect was not negligent on the *facts* of that case. There is no discussion of the privity doctrine anywhere in the opinion.

In *Bates & Rogers Corp.* v. *North Shore Sanitary Dist.* (1984), 128 Ill. App. 3d 962, 471 N.E. 2d 915, affirmed (1985), 109 Ill. 2d 225, 486 N.E. 2d 902, the contractor's action against the architect was barred, not by the privity doctrine, but by a specific promise not to sue contained in the *contractor's* agreement with the owner. There is nothing in either opinion which contradicts *Normoyle-Berg & Assoc., supra,* or otherwise suggests that Illinois has revived the privity doctrine.

The North Carolina case cited by the majority, *McKinney Drilling Co.* v. *Nello L. Teer Co.* (1978), 38 N.C. App. 472, 248 S.E. 2d 444, has been all but overruled by later cases in that state. See *Davidson & Jones, supra; Shoffner Indus., Inc.* v. *W.B. Lloyd Constr. Co.* (1979), 42 N.C. App. 259, 257 S.E. 2d 50, certiorari denied (1979), 298 N.C. 296, 259 S.E. 2d 301; *Quail Hollow East Condominium Assoc.* v. *Donald J. Scholz Co.* (1980), 47 N.C. App. 518, 268 S.E. 2d 12, certiorari denied (1980), 301 N.C. 527, 273 S.E. 2d 454.

Both *State, ex rel. Smith,* v. *Tyonek Timber Co.* (Alaska 1984), 680 P. 2d 1148, and *Florida Power & Light Co.* v. *Westinghouse Elec. Corp.* (Fla. 1987), 510 So. 2d 899, involve attempts to apply tort theories in a sale-of-goods transaction. Like *Chemtrol Adhesives, supra,* they are inapplicable to the instant case.

*R.J. Reagan Co.* v. *Kent* (Tex. Civ. App. 1983), 654 S.W. 2d 532, was decided by the application of Texas civil venue statutes, not by the application of the common-law privity doctrine. In *R.H. Macy & Co.* v. *Williams Tile & Terrazzo Co.* (N.D. Ga. 1984), 585 F. Supp. 175, the outcome was determined by Georgia's privity statute. Since these statutes are not a part of Ohio law, these cases are inapposite.

"We have never drawn that categorical distinction, and see no basis for establishing such an arbitrary limitation now. * * * [W]hile the rule has been developed in the context of cases involving accountants, it reflects our concern for fixing an appropriate ambit of duty, and there is no reason for excepting from it defendants other than accountants * * *." *Id.* at 424, 541 N.Y. Supp. 2d at 338-339, 539 N.E. 2d at 94-95. *Ossining* makes it clear that the law of New York is not what the majority wishes it to be.

While the Virginia cases cited by the majority do, at least, squarely agree with the majority's position, closer inspection reveals that they are poorly reasoned. The Virginia Legislature long ago abrogated the privity doctrine by statute in cases of personal injury, property damage, and products liability. See Va. Code Sections 8.01-223 and 8.2-318. The Virginia Supreme Court has justified the doctrine's continued survival in professional malpractice cases, partially by resort to rules of statutory construction not applicable in Ohio,[10] but mostly by adopting the so-called "economic loss" rule. Under this rule, losses for personal injury or property damage may be recovered in tort absent privity of contract, but "purely economic" losses cannot. *Blake, supra,* at 34, 353 S.E. 2d at 726; *Sensenbrenner, supra,* at 422-423, 374 S.E. 2d at 56-57.

This position has been rejected by a majority of other jurisdictions. See, *e.g., Council of Co-Owners Atlantis Condominium, Inc.* v. *Whiting-Turner Contracting Co.* (1986), 308 Md. 18, 33-35, 517 A. 2d 336, 344-345, and cases cited therein. The distinction drawn by the Virginia court between "economic losses" and other injuries is meaningless because, ultimately, the law of torts treats *all* injuries — whether physical, psychological, or financial — as economic losses remedied by a transfer of money from the tortfeasor to the victim. See, *e.g.,* Posner, Economic Analysis of Law (3 Ed. 1986) 177-185, Sections 6.11-6.12 (discussing damage awards for lost earning capacity and wrongful death). In this sense all injuries to person or property create "economic losses."

Further, by effectively requiring some plaintiffs to wait until physical injury occurs before bringing suit, the economic loss rule penalizes prudent conduct. "If there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it?" *Barnes* v. *Mac Brown & Co.* (1976), 264 Ind. 227, 230, 342 N.E. 2d 619, 621.

The economic loss rule is at odds with the basic policy of tort law. Tort law "is directed toward the compensation of individuals * * * for losses which they have suffered within the scope of their legally recognized interests * * * where the law considers that compensation is required." Prosser & Keeton, *supra,* at 5-6, Section 1. Tort liability is imposed for conduct which is socially unreasonable, *id.* at 6, regardless of the nature of the injuries caused by that conduct.[11] In adopting

---

[10] Under Virginia law, statutes in derogation of the common law are to be given a strict construction. *Blake, supra,* at 34, 353 S.E. 2d at 726. Ohio does not follow this rule. R.C. 1.11.

[11] For example, acts of fraud usually

the economic loss rule as its justification for the resurrection of the privity doctrine in design malpractice cases, the majority has lost sight of this principle.

Finally, the majority advances the fantastic contention that the privity doctrine is necessary to "hold parties to their contracts." The grant to certain professionals of immunity from liability for misperformance of their contractual duties does not encourage the performance of contractual duties.

The majority expresses the concern that, absent the privity doctrine, plaintiffs might attempt to use tort law as a means of avoiding contractual limitations on their right to recover, such as liability limits, choice-of-forum clauses, and arbitration clauses. We should give effect to such contractual provisions, but we need not disinter the privity doctrine to do this. Design professionals can contract directly with builders and others to limit their potential exposure to malpractice liability; alternatively, provisions in contracts between the owner and builders limiting the liability of design professionals to the builders may be enforced through third-party beneficiary theory. See, *e.g., Bates & Rogers Corp.* v. *North Shore Sanitary Dist.* (1984), 128 Ill. App. 3d 962, 471 N.E. 2d 915, affirmed (1985), 109 Ill. 2d 225, 486 N.E. 2d 902.

Thus, the majority has failed to articulate a sound policy to support its application of the privity doctrine to shield design professionals from the consequences of their negligence. Certainly, "lack of privity [itself] does not constitute a policy reason for not imposing liability where negligence is shown to be a substantial factor in occasioning the harm." *A.E. Investment Corp.* v. *Link Builders, Inc.* (1974), 62 Wis. 2d 479, 488, 214 N.W. 2d 764, 769.

*In all but Virginia, courts which have considered the question before us have concluded that design professionals should be held responsible for economic losses caused by their negligence.*[12]

I believe that the application of the privity doctrine in this case stems from flawed reasoning. The majority's decision is certainly at odds with the law as it exists almost everywhere else in the United States. Accordingly I must dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

---

cause only purely economic losses to the victim; yet, fraud is universally regarded as a tort, even in Virginia. See, *e.g., Pigott* v. *Moran* (1986), 231 Va. 76, 81, 341 S.E. 2d 179, 182; *Jefferson Std. Life Ins. Co.* v. *Hedrick* (1943), 181 Va. 824, 833, 27 S.E. 2d 198, 202.

[12] See note 8, *supra.*