SITO, Appellee,

v.

JACKSHAW PONTIAC, INC. et al., Appellants.

[Cite as *Sito v. Jackshaw Pontiac, Inc.* (1998), 127 Ohio App.3d 389.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72390.

Decided April 27, 1998.

390

*Ronald S. Marshek,* for appellee.

*James E. Gray,* for appellant Jackshaw Pontiac, Inc.

*Dennis Minni,* for A & E Enterprises.

*Davis & Young* and *Marc A. Sanchez,* for All Automotive, Inc.

*Darya P. Jeffreys,* for National Car Mart.

*Zipkin, Fink & Whiting* and *Lewis A. Zipkin,* for National Car Mart.

*Weltman, Weinberg & Reis* and *Rosemary Taft Milby,* for Provident Bank.

---

PATRICIA ANN BLACKMON, Administrative Judge.

Appellant, Jackshaw Pontiac, Inc., appeals a decision by the trial court in favor of appellee, Florence M. Sito, who sued appellant under the Ohio Consumer Sales Practice Act for selling her a car that had been involved in a flood. Jackshaw assigns the following two errors for our review:

"I. The trial court erroneously dismissed appellant Jackshaw Pontiac's cross–claim against National Car Mart.

"II. The trial court erroneously found that a negligent misrepresentation was made by appellant Jackshaw Pontiac to the appellee, upon which she relied in purchasing the 1991 Pontiac Firebird that is the focus of this case."

Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the trial court. The apposite facts follow.

An automobile wholesaler purchased a 1991 Pontiac Firebird on March 19, 1993 from Pennsylvania Mutual. Pennsylvania Mutual informed the wholesaler that the car was flood-damaged. Eleven days later, the wholesaler sold the car to National, another automobile wholesaler. Bobby Wolf, an employee at National, handled the transaction. At the time of this transaction, some repairs had been made to the car. The first wholesaler also informed National that the car was flood-damaged. National did not disclose this fact to a subsequent wholesaler and owner of the car. Not knowing that the car was damaged, the subsequent wholesaler and owner sold the car to Jackshaw. Jackshaw inspected the car before the purchase and made repairs to the car after the purchase.

Jackshaw then sold the car to Sito. Before the sale, Sito requested some minor repairs to the car, which were made. Prior to purchasing the car, Sito inquired about the previous ownership of the car. At trial, Sito testified that James Ehrbar, the salesman who sold her the car, led her to believe the car had only one previous owner and told her it was traded-in for another car. Ehrbar testified that he made no such representations. Sito's testimony was corroborated by testimony of Linda Benson, who was present at the time of the sale.

Emmanuel Karides, the finance manager at Jackshaw, arranged for Provident Bank to handle the financing. Sito traded in a Chevrolet as the down payment on the Pontiac. The Chevrolet was subject to a mortgage of approximately $10,124.11 to Society Savings Bank (now Key Corp Bank), but a credit of $500 was allowed regardless. Sito also received as credit $1,000 from the manufacturer and paid $200 in cash. The total cost and expenses of the Pontiac were $22,403.70. The financing by Provident was for sixty-six installments of $339.45. Sito signed the promissory note, obligating her to the total cost. Sito made twenty-eight monthly payments.

Sometime during 1994 or 1995, the Pontiac was stolen and stripped. As a result, $8,000 worth of repairs was required to fix the car. Thereafter, the car was repaired by an out-of-town mechanic. The mechanic told Sito that the car had been involved in a flood. Afraid for her safety, Sito refused to continue to drive the car and refused to make payments. She tried to take the car back to Jackshaw, but it refused.

Sito sued all of the prior owners. The trial court dismissed with prejudice all of them except Jackshaw.

The trial court concluded that (1) there was no evidence of any conspiracy between the defendants; (2) any violations of the Ohio Consumer Sales Practices Act were time-barred by R.C. 1345.06; (3) there was no breach of any express or implied warranties; (4) there was no failure of responsibility by Jackshaw to take back the car, since there had been substantial changes made to the car; (5) there was no fraud; (6) there were negligent misrepresentations as to the source of the car, upon which Sito relied to her damage; (7) the car was of a lesser value regardless of its mechanical condition because of the flood damage; (8) Sito was induced to purchase the car and pay a sum other than the flood-damaged value; (9) the value of the car was $10,300, and Sito was damaged in the amount of the difference between $10,300 and the total obligation incurred; and (10) Sito is entitled to $12,103.70 from Jackshaw with interest from July 13, 1993 at ten percent interest per annum until paid. The trial court further concluded that Sito was not entitled to a recovery of punitive damages or attorney fees.

██ Jackshaw's first assignment of error alleges that the trial court erroneously dismissed its cross-claim. Jackshaw argues that its claim against National's negligent misrepresentation of the condition of the Pontiac is not barred by the fact that there is no privity between National and Sito. Jackshaw also argues that National knew or should have known that Jackshaw, as a car dealer, was a foreseeable third party that would rely on National's misrepresentation.

██ While the trial court's decision to dismiss a nonjury claim is discretionary in nature, such decision can be made only after the court weighs the evidence presented. *Bank One v. Doughman* (1988), 59 Ohio App.3d 60, 571 N.E.2d 442; see, also, *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267. Consequently, we must review the trial court's decision using the manifest-weight standard.

The standard of review for manifest weight of the evidence was set forth in the syllabus of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. The Ohio Supreme Court held that judgments supported by some competent, credible evidence "going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d at 280, 8 O.O.3d at 262, 376 N.E.2d at 579, citing *Chicago Ornamental Iron Co. v. Rook* (1915), 93 Ohio St. 152, 160, 112 N.E. 589, 591; and *Portage Markets Co. v. George* (1924), 111 Ohio St. 775, 146 N.E. 283, paragraph one of the syllabus.

██ The doctrine of negligent misrepresentation "imposes liability on a professional who has negligently supplied information for the guidance of others in their business transactions, where the recipient of the information, a foreseeable person, justifiably relies upon it." *DeCapua v. Lambacher* (1995), 105 Ohio App.3d 203, 206, 663 N.E.2d 972, 974. See, also, *Gutter v. Dow Jones, Inc.* (1986), 22 Ohio St.3d 286, 288–289, 490 N.E.2d 898, 900; *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 156–157, 24 O.O.3d 268, 269–270, 436 N.E.2d 212, 214–215. Privity of contract is required for negligent misrepresentation where the only recovery sought is indemnification, and where there is no nexus sufficient to substitute for privity of contract. See *Floor Craft v. Parma Gen. Hosp.* (1990), 54 Ohio St.3d 1, 4, 560 N.E.2d 206, 208–209; *Clevecon v. Northeast Ohio Regional Sewer Dist.* (1993), 90 Ohio App.3d 215, 220, 628 N.E.2d 143, 146–147. However, privity of contract is not required where the third party is a member of a limited class whose reliance on the misrepresentation is foreseen. *Haddon View, supra.*

Jackshaw purchased the car from a wholesaler that sells primarily to dealers, who had bought the car from National. National did not inform the wholesaler

that the car was flood-damaged. It follows that Jackshaw is a foreseeable third party that would rely on the misrepresentation made by National. However, other factors exist that bar Jackshaw's claim against National.

Prior to actually buying the car from the wholesaler, Jackshaw inspected the car at its facility for three days. Also, after the purchase, Jackshaw performed repairs on the car. Since Jackshaw is an automotive expert, these facts are evidence that Jackshaw knew or should have known that the car was flood-damaged. Hence, Jackshaw's actions interrupt reliance on National's misrepresentation. Therefore, we conclude that the trial court properly dismissed Jackshaw's cross-claim against National. Jackshaw's first assignment of error is overruled.

In Jackshaw's second assignment of error, Jackshaw argues that the evidence supports its contention that it did not represent to Sito that the car was a trade-in or had only one previous owner.

Sito testified that when she inquired about the previous owner, her salesman, James Erhbar, told her that someone traded the car in for a newer model. Sito's testimony was corroborated by Linda Benson, who accompanied Sito when she bought the car. However, Ehrbar testified that his response to Sito was the industry-standard reply: "I don't know who traded the car in, but I can find out if you'd like me to find out."

Assuming that Ehrbar's testimony is accurate, a misrepresentation still exists. Ehrbar told Sito that the car was a trade-in; that is what she heard, that is what she relied upon. Whether he knew the previous owner is irrelevant. The fact remains that Jackshaw's agent, Ehrbar, told Sito that the car was a trade-in, when it was not. The car had been bought and sold three times before she bought it.

Furthermore, the term "trade-in" gives the implication of only one previous owner. The car was a 1991 model. It was 1993 when the sale in question took place. Since there is only a two-year time span, it was reasonable for Sito to conclude that there was only one previous owner. We conclude that the evidence supports the trial court's finding that Jackshaw engaged in negligent misrepresentation when it sold the flood-damaged car to Sito. Jackshaw's second assignment of error is overruled.

*Judgment affirmed.*

SPELLACY and ROCCO, JJ., concur.