DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted the summary judgment motion of defendant-appellee, Munger Munger Associates Architects, Inc. ("Munger") in an action filed by plaintiff-appellants, Mosser Construction, Inc. and St. Paul Fire and Marine Insurance Company ("St. Paul").
 {¶ 2} This case involves the construction of the Howard L. Collier Nursing Allied Health Building for the Medical College of Ohio ("MCO") in Toledo, Ohio ("the project"). The relevant and undisputed facts of this case are as follows. In 1993, Munger entered into an agreement, titled the Associate Architect's Agreement, with the state of Ohio, Department of Administrative Services, through the Deputy Director for the Division of Public Works ("deputy director"). Under the terms of the agreement, Munger was named the Associate Architect for the project and was responsible for, among other things, preparing the project's drawings and specifications for the approval of the deputy director, assisting the deputy director in obtaining bids and awarding construction contracts for the project, and administering the construction contracts for the benefit of the deputy director and MCO.
 {¶ 3} In 1995, Mosser entered into a contract with the state of Ohio, through the Director of Administrative Services, under which Mosser was to act as the lead contractor on the MCO project ("Contractor's Agreement"). Under the terms of that contract, Mosser's primary responsibility was to construct the building in accordance with Munger's design and contract drawing specifications as well as to supervise subcontractors working under it.
 {¶ 4} After the building was completed, water infiltration, moisture and mold were discovered inside the building. An investigation revealed that one of the major causes of the water infiltration was the faulty design and construction of a trench drain. Munger designed the trench drain, Mosser installed it, and Western Waterproofing, a subcontractor of Mosser, installed a waterproofing membrane lining known as EPDM in the trench drain.
 {¶ 5} After the water problems were discovered, the deputy director assigned Munger's agreement and Mosser's contract to MCO. Munger and Mosser then worked with MCO to remediate the water problems. On April 28, 2003, Munger and MCO signed an amendment to the Associate Architect's Agreement, through which Munger agreed to certain redesigns and repairs to the building at no cost to MCO, and MCO agreed to waive all claims it had against Munger. Similarly, in May 2003, Mosser and MCO signed an amendment to the Contractor's Agreement. Under the terms of that amendment, Mosser agreed to execute enumerated repairs to the building at no cost to MCO and MCO waived all claims that it had against Mosser. Mosser also waived any claims it may have had against MCO arising out of the building project. Subsequently, Mosser allegedly spent $1,046,012 to rebuild the trench drain according to new specifications and designs provided by Munger.
 {¶ 6} On May 12, 2004, Mosser and St. Paul Fire, as subrogee, filed suit against Munger and other subcontractors involved in the project to recover the costs of rebuilding the trench drain. As against Munger, Mosser and St. Paul asserted claims for implied indemnification, negligence and contribution. In particular, they alleged that the water problems were caused by a number of deficiencies including defective architectural design plans and specifications, and that Munger was negligent in its design of the building, its preparation of the building's plans and specifications, and in its supervision of the construction of the building, all of which caused and/or contributed to the subject water infiltration and damage to the building. Munger filed an answer and counterclaim for indemnification. Munger's claim for indemnification against Mosser was based on the general conditions of Mosser's contract with the state which reads in Article 16.1.1 as follows:
 {¶ 7} "To the fullest extent permitted by laws and regulations, the Contractor [Mosser] shall indemnify and hold harmless the Director, the Owner and the Associate [Munger], their respective officers, consultants, agents and employees, in both individual and official capacities, from and against all claims, damages, losses and expenses, direct, indirect or consequential arising out of or resulting from the Work."
 {¶ 8} On January 3, 2005, Munger filed a motion for summary judgment on all of appellants' claims against it. Appellants filed a response and the court subsequently held an oral hearing on the matter. At that hearing, Mosser conceded that Munger was entitled to summary judgment on Count VI of the complaint, Mosser's claim for contribution. On April 19, 2005, the lower court issued a judgment entry granting Munger summary judgment on all of appellants' claims against it. It is from that judgment that appellants now appeal.
 {¶ 9} Appellants challenge the trial court's judgment through the following assignments of error:
 {¶ 10} "1. The trial court erred as a matter of law in granting defendant/appellee, Munger Munger Associates Architects, Inc.'s, motion for summary judgment on plaintiffs/appellants' negligence claim because a lack of privity of contract is not an absolute bar to recovery for purely economic losses where there is a sufficient nexus that can serve as a substitute for privity, and a genuine issue of material fact exists in this case as to whether defendant Munger Munger 
Associates Architects, Inc. exercised control over plaintiff Mosser Construction Inc. during construction so as to create a sufficient nexus between the parties to serve as a substitute for privity.
 {¶ 11} "2. The trial court erred as a matter of law in granting defendant Munger Munger Associates Architects, Inc.'s motion for summary judgment on plaintiff's claim for indemnification because Ohio law recognizes a right of one who is only passively negligent, or secondarily liable, to recover from one who is actively negligent, or primarily liable, and a genuine issue of material fact exists as to whether Munger Munger 
Associates Architects, Inc. was actively negligent and whether Mosser Construction, Inc. was only passively negligent, whereby a cognizable cause of action for indemnification exists."
 {¶ 12} Because both of appellants' assignments of error challenge various aspects of the lower court's order granting Munger summary judgment, we will apply the same standard of review to our discussion of those issues. Appellate review of a trial court's grant of summary judgment is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66; Civ.R. 56(C).
 {¶ 13} Appellants' first assignment of error addresses the trial court's granting of summary judgment to Munger on appellants' claim of negligence. In their complaint against Munger, appellants averred that Munger was negligent in its design of the building, its preparation of the building's plans and specifications, and in its supervision of the construction of the building, and that as a result of that negligence, water infiltrated and damaged the MCO building which Mosser has had to repair at substantial cost. Accordingly, Mosser sought to recover purely economic damages. In Floor Craft Floor Covering, Inc. v.Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, syllabus, the Supreme Court of Ohio held that "[i]n the absence of privity of contract no cause of action exists in tort to recover economic damages against design professionals involved in drafting plans and specifications." The foundation for this standard principle of common law, known as the economic loss doctrine, is that "[i]n the absence of privity of contract between two disputing parties * * * `there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" Id. at 3, quoting Prosser 
Keeton, Law of Torts (5 Ed. 1984) 657, Section 92. This is the majority rule and the one to which Ohio adheres. ChemtrolAdhesives, Inc. v. Am. Mfrs. Ins. Co. (1989), 42 Ohio St.3d 40,45; Inglis v. Am. Motors Corp. (1965), 3 Ohio St.2d 132, paragraph one of the syllabus.
 {¶ 14} It is undisputed that in the present case, there was no privity of contract, no direct contractual relationship that is, between Mosser and Munger. Nevertheless, appellants assert that under Ohio law, a lack of privity of contract is not an absolute bar to recovering purely economic damages under the circumstances of this case. Appellants cite the case ofClevecon, Inc. v. Northeast Ohio Regional Sewer Dist. (1993),90 Ohio App.3d 215, for the proposition that a plaintiff may recover economic damages in a negligence action if a "sufficient nexus" exists between the parties to serve as a substitute for contractual privity. In Clevecon, the court determined that where an engineering company that designed a sewer tunnel exercised a substantial amount of control over the project, a sufficient nexus was established to substitute for contractual privity. Id. at 221. In particular, the engineering company's engineers were present at the construction site and gave orders about the project, including ordering the removal of concrete segments and the application of additional grouting. CitingFloor Craft, supra at 5, the court in Clevecon noted that "`The power of the architect to stop the work is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.'" Id.
 {¶ 15} The record in the present case does not support appellants' position that Munger possessed control over the project similar to that in Clevecon. Although representatives of Munger were on the job site approximately three days a week to inspect Mosser's work and/or answer questions or provide guidance to Mosser, the contracts clearly provide that Munger only acted as an intermediary between the deputy director or state architect and Mosser. Moreover, Munger only had the authority to authorize minor changes in the plans. It could not make major changes. Faced with Munger's summary judgment motion, appellants did not present evidence that Munger had the power over the project contemplated in Clevecon. Accordingly, appellants failed to raise a genuine issue of material fact as to whether there was a sufficient nexus between Mosser and Munger to substitute for privity of contract and the lower court did not err in granting Munger summary judgment on appellants' claim of negligence. The first assignment of error is not well-taken.
 {¶ 16} In their second assignment of error, appellants assert that the lower court erred in granting Mosser summary judgment on their claim for common law indemnification. In Reynolds v.Physicians Ins. Co. of Ohio (1993), 68 Ohio St.3d 14, 16, the Supreme Court of Ohio explained the law of indemnity as follows:
"The rule of indemnity provides that `where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.' TravelersIndemn. Co. v. Trowbridge (1975), 41 Ohio St.2d 11, 14 * * *. When a person is secondarily liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries. See Globe Indemn. Co. v. Schmitt (1944),142 Ohio St. 595, 603 * * *.
 {¶ 17} "An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. See Losito v. Kruse (1940), 136 Ohio St. 183, 185
* * *. Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant. Id. at 1851-86 * * *. Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence. Globe Indemn.Co. v. Schmitt, supra, 142 Ohio St. at 599 * * *."
 {¶ 18} Upon review of the undisputed facts of this case, we must conclude that the trial court properly granted Munger summary judgment on appellants' claim for indemnification. In support of their response to Munger's motion for summary judgment, appellants filed the affidavit of Andrew C. Boedeker, a project manager of Mosser. Boedeker attested that, "[a]fter months of investigation into the water leaks, it was determined that one of the major causes of the water infiltration was the faulty design and construction of the trench drain." (Emphasis added.) In their brief before this court, appellants also assert that "[t]he [trench drain's lining] was also installed incorrectly by defendant Western Waterproofing, the waterproofing subcontractor." Indeed, along with the action against Munger, appellants filed an action against Western Waterproofing for breach of contract, breach of express and implied warranties, contractual indemnification, common law indemnification, negligence and contribution. In addition, Mosser's contract with the state of Ohio, through the Director of Administrative Services, provides under Article 2 of the General Conditions as follows:
 {¶ 19} "2.1.1 The Contractor shall be responsible for and have control over all construction means, methods, techniques, sequences and procedures for all portions of the Contractor's Work and shall be responsible for any injury or damage which may result from improper construction, installation, maintenance or operation." Moreover, Article 15 of the General Conditions provides:
 {¶ 20} "15.3 The Contractor [Mosser] shall be fully responsible for all acts and omissions of the Contractor's Subcontractors and Material Suppliers and shall be responsible for scheduling and coordinating the Work of the Contractor's Subcontractors and Material Suppliers with the Lead Contractor.
 {¶ 21} "* * *
 {¶ 22} "15.4 The Contractor shall require each Subcontractor and Material Supplier to fully warrant and guarantee, for the benefit of the Owner, the effectiveness, fitness for the purpose intended, quality and merchantability of any Work performed or item provided or installed by such Subcontractor or Material Supplier."
 {¶ 23} Given its responsibilities under its contract with the state, Mosser cannot claim to be passively negligent. Mosser was responsible for the acts and omissions of its subcontractors and, as such, was actively negligent in failing to adequately supervise the work of its subcontractor responsible for waterproofing the trench drain. This court has stated that "[i]ndemnification is not available where two persons who owe a common duty to a third party act in concert to breach that duty."Franklin Park Mall, Inc. v. WTVG, Inc. (1995),101 Ohio App.3d 535, 538, citing Maryland Cas. Co. v. Frederick Co. (1944),142 Ohio St. 605, paragraph three of the syllabus. Because, under the facts of this case, Mosser cannot be viewed as having been passively negligent in its construction of the MCO project, the lower court did not err in granting Munger summary judgment on appellants' claim for indemnification and the second assignment of error is not well-taken.
 {¶ 24} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J., concur.