Freeman, Appellee, *v.* The Norwalk Cemetery Assn., Appellant.

(No. 598—Decided June 5, 1950.)

*Messrs. Freeman & Freeman,* for appellee.
*Messrs. Young & Young,* for appellant.

CONN, J. This is an action for injunction to restrain defendant from investing, in any investments other than those permitted by the statutes and laws of Ohio, monies held by it as trustee. An appeal has been taken by defendant on questions of law and fact from the Court of Common Pleas, and the cause in this court has been submitted on the original pleadings, copies of docket and journal entries, agreed statement of facts, stipulation and briefs of counsel.

It is admitted in the pleadings or stipulated by the parties that the defendant is a corporation organized and existing under the laws of Ohio and owning and operating a cemetery in the city of Norwalk, known as Woodlawn Cemetery; that the defendant in its operation has separate funds, called the general fund and the permanent fund; that its general fund is derived from the proceeds of sales of burial lots, money received for services for lot care, maintenance, digging of graves, etc., and interest derived from its permanent fund; and that all operating expenses are paid from its general fund.

It is further stipulated that its permanent fund consists entirely of money paid to defendant by various persons, for care and maintenance of burial lots owned by them in the cemetery, under separate written agree-

ments, of which the following, with some exceptions, is a copy:

"Permanent Fund.

"Obligation of the Norwalk Cemetery Association for the perpetual care of a private burial lot:

"The Norwalk Cemetery Association of Norwalk, Ohio, hereby acknowledges the receipt of ——— dollars from —————, owner of lot No. —, which sum has been received and is to be held by said association as a permanent fund.

"The said association, in consideration of said payment hereby agrees with said ———, heirs and assigns forever, to cause the grass which may grow upon said lot to be cut and removed from same when necessary, and forever kept in proper condition by top dressing and seeding at such times and in such manner as the trustees of said association shall deem expedient for the proper care of said lot and the improvement of the cemetery.

"Said association shall not be required to expend any sum on the care of said lot exceeding the net income derived from the investment of the before named sum of ——— dollars.

"Norwalk Cemetery Association
"—————, President.
"Norwalk, Ohio, ———, 19—."

It is also admitted that plaintiff has paid into the permanent fund, pursuant to such writing, the sum of $100 for the care and maintenance of lots in the cemetery; that the total amount paid defendant in consideration of such written agreements up to March 1, 1950, is the sum of $71,819.12, of which amount $57,500 has been invested in United States government bonds, $10,000 deposited in the Home Savings & Loan Company and $4,319.12 in a commercial account with The Huron County Banking Company; that no part of the principal of the permanent fund is ever expended by

defendant; that defendant takes care of all lots for which payments have been made into the permanent fund, though the net income from the amount so paid is less than the actual cost of caring for such lots; and that due to declining interest rates and increased labor costs, the net income received from payments made into the permanent fund is substantially less than the actual cost of the care required for such lots.

The Norwalk Cemetery Association was organized nearly a hundred years ago for the purpose of owning and operating a cemetery in the then village of Norwalk. The rules and regulations adopted by the cemetery association make provision for the creation of a permanent fund pursuant to the terms of the receipt and agreement hereinbefore referred to, "no part of which can be used for any purpose but must be loaned out to provide monies with which to care for the lots."

The statutes of Ohio make provision for the establishment and operation of cemeteries by private companies or associations, townships and municipal corporations, and also authorize the establishment and maintenance of union cemeteries by two or more townships or municipal corporations. 7 Ohio Jurisprudence, 4, Section 2.

The trustees of townships, municipal corporations and union cemeteries are authorized by statute to receive gifts in trust for the creation of a permanent fund, the income from which shall be used for the upkeep and care of burial lots in the respective cemeteries. In each instance, the statutes prescribe how the permanent funds so created shall be invested. Sections 3457, 4168, 4169 and 4193-1, General Code.

The provisions of the General Code relative to the powers and duties of cemetery associations are found in Chapter 7 of Division VI of Title IX, Corporations Not for Profit. Under the terms of Section 10110 in this chapter, cemetery associations are authorized to

receive gifts "for the purpose of * * * maintaining * * * and beautifying therein any particular * * * cemetery lot * * * and appropriate such property, or the proceeds thereof, to any of the foregoing purposes according to the terms of the trust for which it has been given, granted or devised."

Subsequent sections in the chapter (Sections 10117, 10118 and 10119) provide for the creation of a sinking fund, how such funds may be invested and how expended. The sinking fund thus provided for and the interest thereon is substantially limited to capital improvements in the enlargement and maintenance of the cemetery grounds.

The trust fund for lot care and improvement created under the authority of Section 10110, General Code, and described as a permanent fund in the rules and regulations of the cemetery association, can be differentiated from the sinking fund authorized by other provisions of the Code to which reference has already been made. It is of some significance that the act authorizing the creation of a sinking fund was not passed until 1883 (80 Ohio Laws, 91), many years after the creation of the permanent fund of the association.

Section 10109, General Code, provides that all receipts and income should be applied to the payment of lands, etc., and to the general purposes of the association. No debts shall be contracted in anticipation of future receipts, except for the original purchase of the land and the laying out, enclosing and embellishing of the grounds and avenues therein. All its funds must be used exclusively for the purposes of the company, as hereinabove specified, or invested in a fund the income of which shall be so used and appropriated.

Section 10110, General Code, to which attention has already been called, authorizes every cemetery association to receive gifts in trust for the uses and purposes therein defined.

Section 10115, General Code, provides that any surplus derived from the sale of a portion of the premises must be invested upon interest, and the income derived therefrom applied to keeping in repair the unsold portion thereof.

Section 10117, General Code, provides for the creation of a sinking fund and Section 10118, General Code, prescribes how its funds shall be invested. Section 10119, General Code, provides for the expenditure of the sinking fund for more or less capital improvements. Although it makes no specific provision for paying off bonded indebtedness as is the case ordinarily with a sinking fund, it contemplates something in the nature of an endowment for such purpose.

Section 3457, General Code, authorizes township trustees to receive gifts, etc., in trust for a permanent fund to be invested by them, the income to be used in the case of any burial lot designated by the person making the gift. Under Section 3458, General Code, such funds are to be invested in interest-bearing securities, and the trustees may possibly invest the funds in stocks, although a comma is missing between the words "interest" and "dividends."

Sections 4168 and 4169, General Code, authorize a city to accept and maintain a permanent fund for the care of a municipal cemetery. Such funds are to be invested in interest-bearing obligations of the city or other authorized interest-bearing securities.

The permanent fund of union cemeteries is to be invested under the same terms and conditions fixed by law for the investment of the funds of a minor by his guardian. Section 4193-1, General Code.

In the absence of statutory provisions or those provided in the trust agreement, a trustee is required to exercise the same degree of diligence and care that a man of ordinary prudence would exercise in the management and investment of his own money. *Willis,*

*Admr.,* v. *Braucher, Gdn.,* 79 Ohio St., 290, 87 N. E., 185, 44 L. R. A. (N. S.), 873; *In re Estate of Sedgwick,* 74 Ohio App., 444, 59 N. E. (2d), 616.

If the trustee has greater skill than a man of ordinary prudence, he is under a duty to exercise such skill as he has. Restatement of the Law of Trusts, 448, Section 174.

In the instant case the rules and regulations of the defendant authorize it to receive deposits from owners of lots in the cemetery "large enough so that the interest upon same will keep the lot in good care perpetually. The sum so deposited becomes a part of the permanent fund, no part of which can be used for any purpose but must be loaned out to provide means with which to care for the lots."

Under the terms of the receipt and agreement hereinbefore referred to, given by the cemetery association to each lot owner who contributes to the fund for perpetual care for his lot, the defendant is under the heavy duty to preserve the amount so donated as a permanent fund for the perpetual care of the respective burial lots of those contributing to such permanent fund.

It appears to follow quite conclusively that in view of the absence of any statutory provision, or provision in the charter or in the rules and regulations of the cemetery association or in the agreement with the lot owners, expressly defining how the money in the permanent fund shall be invested, the defendant as trustee is required to exercise the same degree of diligence and care that a man of ordinary prudence would exercise in the management and investment of his own money.

The standard of care and good faith required of a trustee is stated in 40 Ohio Jurisprudence, 364, Section 138, as follows:

"In the administration of the trust, the trustee owes the beneficiary the duty to exercise that degree of care and skill which an ordinarily prudent man would exercise in dealing with his own property. Unusual ability and extraordinary care are not required. This is the minimum standard to which a trustee must be held, and it is an external one. If a trustee does not have this degree of skill or exercise that amount of care, he is not excused. If he has a higher ability or greater skill than that of the ordinarily prudent man, he is under a duty to exercise this higher degree."

See, also, *Gilbert* v. *Sutliff*, 3 Ohio St., 129; *Willis, Admr.*, v. *Braucher, Gdn.*, *supra*; *Morris* v. *Mull*, 110 Ohio St., 623, 144 N. E., 436, 39 A. L. R., 323; 54 American Jurisprudence, 286, Section 322; and Restatement of the Law of Trusts, 448, Section 174 (comment [a]).

In the Restatement of the Law of Trusts, 645, Section 227, relative to investments which a trustee can properly make, the rule or standard is stated as follows:

"In making investments of trust funds the trustee is under a duty to the beneficiary (a) in the absence of provisions in the terms of the trust or of a statute otherwise providing, to make such investments and only such investments as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived."

The authorities clearly indicate that if the matter of making investments of trust funds is not regulated by statute, or provided for in the trust agreement, or otherwise limited, the common-law rule of ordinary care and prudence, as applied in the light of the facts of each case, quite uniformly prevails.

In view of these considerations, our conclusion is

454

that the petition and prayer of plaintiff can not be granted and that the petition should be dismissed and the injunction dissolved.

*Petition dismissed.*

FESS, J., concurs.
CARPENTER, J., not participating.