DECISION AND JUDGMENT ENTRY
{¶ 1} Shelia Metzger appeals the Gallia County Court of Common Pleas' decision finding in favor of three doctors and Holzer Clinic, Inc. ("Holzer Clinic"), on her medical malpractice claim. Metzger claims that the trial court erred in failing to excuse for cause all prospective jurors who were current or former patients of a Holzer Clinic doctor or who had family members who were patients or were employed by Holzer Clinic. Because we cannot say that the trial court abused its discretion in determining that the jurors selected could be fair and impartial, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Metzger's mother, Rachel Colley, went to the Holzer Medical Center emergency department on December 21, 1998, with complaints of shortness of breath and swelling in her legs. Colley's medical history at that time included chronic obstructive pulmonary disease, congestive heart failure, stroke, pulmonary hypertension, pulmonary fibrosis, diabetes, and chronic reflux disease. Holzer Medical Center admitted Colley to its intensive care unit, where she received care from several internal medicine specialists. On December 26, 1998, Colley died.
 {¶ 3} Metzger, individually and as executor of Colley's estate, initiated a medical malpractice action against internal medicine specialists Bashar M. Al-Ataie, M.D.; Mohendra Sud, M.D.; Shruti R. Trehen, M.D.; Nabil Wassili Fahmy, M.D.; David P. Evans, M.D.; and Viswahath N. Shenoy, M.D.; and against Holzer Clinic and Holzer Hospital Foundation. Holzer Clinic has a contract with Holzer Medical Center to provide physician coverage to hospital patients. Drs. Al-Ataie, Shenoy, Sud, and Trehen are employed by Holzer Clinic.
 {¶ 4} Metzger voluntarily dismissed Drs. Fahmy, Evans, and Shenoy from the case, and Metzger reached a settlement with Holzer Hospital Foundation. The case proceeded to a jury trial against Drs. Al-Ataie, Sud, and Trehan (collectively, "the doctors"), and against Holzer Clinic.
 {¶ 5} During voir dire, Metzger sought to remove several jurors for cause. The jury panel ultimately seated consisted of eight jurors and two alternates, five of whom Metzger had unsuccessfully challenged for cause. The jury returned a verdict in favor of the doctors and Holzer Clinic.
 {¶ 6} Metzger appeals, asserting the following assignment of error: "The trial court erred in failing to excuse for cause all prospective jurors who were current patients of the appellees or who had family members who were current patients and/or current employees of the appellees."
 II. {¶ 7} Metzger contends that the trial court abused its discretion in allowing each of the eight jurors and two alternate jurors to sit on the panel despite their connections to Holzer Clinic or one of the doctors.
 {¶ 8} The decision regarding whether to disqualify a prospective juror for cause is a discretionary function of the trial court, to which we apply the abuse of discretion standard of review. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169. A finding that the trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, we will not substitute our judgment for that of the trial court. Berk at 169.
 {¶ 9} Metzger relies upon the Supreme Court of Appeals of West Virginia for the proposition that "[o]nce a prospective juror has made a clear statement during voir dire reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." O'Dell v.Miller, M.D. (W.Va. 2002), 211 W. Va. 285; 565 S.E.2d 407, 412. TheO'Dell court went on to state that the challenges of selecting a jury in a small community "does not remove the trial court's obligation to empanel a fair and impartial jury * * *." Id. at 413. The O'Dell court concluded that the trial court abused its discretion in declining to dismiss a juror for cause who (1) was currently represented by the law firm representing the defendant doctor and (2) had received treatment from the defendant doctor to address the same physical ailment for which the plaintiff sought treatment. Id. at 409.
 {¶ 10} While we agree that parties are entitled to a fair and impartial jury regardless of the size of the community, a prior physician-patient relationship with a defendant doctor does not act as an automatic bar to a juror serving in a medical malpractice case. Williamsv. Flanigan (Jun. 30, 1997), Guernsey App. No. 96-CA-21. The Williams
court noted, "in a trial court jurisdiction of 40,000 populace, getting a panel that does not know a local surgeon is a rarity." Williams, supra.
However, a doctor-patient relationship does not necessarily constitute a disqualifying bias that cannot be remedied if the juror expresses his ability to evaluate the case without bias. Id.; see also Jacobs v.Robinson Memorial Hosp. (Sept. 14, 1993), Portage App. No. 92-P-0094 (two former patients of defendant physicians could serve as jurors after responding on voir dire that they could be fair and impartial.)
 {¶ 11} In this case, Metzger contends that several jurors made clear statements during voir dire indicating a disqualifying prejudice. In particular, Metzger challenged for cause two jurors who had received care from a doctor with Holzer Medical Center or Holzer Clinic in the past. However, the record does not indicate that either had any experience with Colley's doctors. Metzger also challenged for cause three jurors who are current patients of doctors who practice at the Holzer Medical Center or Holzer Clinic. One of these jurors stated that she had never been dissatisfied with her treatment at Holzer Clinic. Again, none of these jurors' doctors were involved in Colley's treatment. Although the wife of one of these jurors had been a patient of Dr. Trehen in the past, and the same juror indicated that his daughter is employed at "Holzer," he stated that he could be fair and impartial.
 {¶ 12} In declining to dismiss these jurors for cause, the trial court noted that the Holzer medical facility consists of over one hundred physicians serving a rather small community with both outpatient and inpatient services. The court found that the connections the seated jurors had with Holzer Clinic were remote, and that all of the jurors indicated that they could be fair and impartial.
 {¶ 13} The record supports the trial court's conclusion that these jurors' connections to the Holzer Clinic are remote relative to the facts of this case: none of these jurors indicated that they were ever treated by one of the named doctors, by an internal medicine specialist at Holzer Medical Center, or in the intensive care unit at Holzer Medical Center. Although one juror's spouse had a prior doctor-patient relationship with a named doctor, a prior doctor-patient relationship is not an automatic bar to serving as a juror. See, e.g., Williams, supra. Moreover, the fact that this juror has a daughter employed in an unspecified capacity by "Holzer" does not reveal any connection to the individual doctors or departments involved in Colley's treatment.
 {¶ 14} Metzger contends that the trial court's decisions with respect to individual jurors were arbitrary, because the trial court dismissed for cause some jurors whose circumstances were very similar to those of the seated jurors. In particular, the trial court excused for cause a juror whose wife had been a patient of one of the named doctors and who stated that he could be impartial.
 {¶ 15} Despite this seeming lack of consistency, we find no abuse of discretion. The trial court had the opportunity to observe the prospective jurors' demeanor, voice inflections, and gestures, and thereby evaluate their credibility. See State v. DeHass (1967), 10 Ohio St.2d 230. Thus, we defer to the trial court's judgment in evaluating which jurors should be removed for cause when, as here, their statements do not reveal bias.
 {¶ 16} Metzger also asserts that the trial court should have excused the three remaining jurors and two alternate jurors for cause. However, Metzger did not challenge these jurors for cause in the trial court. A party cannot assert new arguments for the first time on appeal.Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43. Therefore, we will not consider issues that an appellant failed to raise initially in the trial court. Lippy v. Society Natl. Bank (1993), 88 Ohio App.3d 33. Because Metzger failed to argue that these jurors should be excused for cause in the trial court, she waived any objection to them. State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 101; Conrad v.Kirby (1940), 66 Ohio App. 359, 362. Moreover, even if Metzger had properly challenged these jurors and alternate jurors in the trial court, we note that their connections to the defendants are just as, if not more, remote as those jurors whom Metzger unsuccessfully challenged for cause.
 {¶ 17} In sum, we find that the trial court did not abuse its discretion in declining to excuse for cause jurors who are current or former patients of Holzer Clinic physicians. None of the jurors had a direct connection with any of the individual doctors that would give rise to a disqualifying bias or prejudice. Therefore, we overrule Metzger's assignment of error, and we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.