OPINION
{¶ 1} Plaintiff-appellant Universal Contracting Corporation ("Universal") appeals from the trial court's entry of judgment notwithstanding the verdict ("JNOV") in favor of defendant-appellee Margo Aug. A jury had awarded Universal $467,154 in damages on its claim that Aug had negligently misrepresented that Preserving Affordable Housing, Inc. ("PAH") had sufficient funds to pay Universal, its general contractor, to complete the $13 million renovation of the Garden Hill Apartments at Winton Terrace, in Cincinnati, Ohio. Aug was PAH's executive officer. The issue in this appeal is whether Aug as a corporate officer could be held separately liable for negligent misrepresentation pursuant to Restatement of the Law 2d, Torts (1965), Section 522 where the parties' contract created a duty to provide ability-to-pay information to Universal. We conclude that the trial court properly entered judgment for Aug on her JNOV motion, where Universal, a sophisticated business entity, after negotiating at arms' length, had entered into an agreement with PAH that imposed a specific duty on PAH to disclose the status of its funding to Universal, and where PAH had breached that duty, and Universal had sued on that breach and recovered economic-loss damages.
 FACTS AND PROCEDURE {¶ 2} PAH was a nonprofit organization in the business of purchasing property in Cincinnati to rehabilitate for use as low-income residential housing. In December 1996, PAH entered into the Winton Terrace renovation contract with Universal. PAH and Universal were the only parties to the contract. Aug signed the contract for PAH in her capacity as its executive officer. Article 3 of the agreement specified PAH's responsibilities. In section 3.11, the contract identified PAH's duty as owner to "furnish, prior to commencing work and at such future times as may be requested, reasonable evidence satisfactory to [Universal] that sufficient funds are available and committed for the entire cost of the Project." The agreement also identified Universal's rights if PAH breached this contracted duty: "Unless such reasonable evidence is furnished, the Construction Manager is not required to commence or continue any Work, or may, if such evidence is not presented within a reasonable time, stop the Project upon 15 days notice to the Owner. The failure of the Construction Manager to insist upon the providing of this evidence at any one time shall not be a waiver of the Owner's obligation to make payments pursuant to this Agreement nor shall it be a waiver of the Construction Manager's right to request or insist that evidence be provided at a later date."
 {¶ 3} Almost immediately after work had begun, Universal and PAH identified defects in the architectural plans that required an expansion of the renovation project and an increase in the expenses involved. In August 1998, Universal's president wrote a letter to Aug at PAH outlining his concerns that PAH might lack the funds to complete the enlarged project. Because of federally imposed tax-credit funding restrictions, PAH could not then provide sufficient funding assurances to Universal. Universal threatened to exercise its contractual right to stop work if PAH could not provide additional assurances of funding. At a meeting in November 1998, Aug provided oral assurance that PAH had additional Housing and Urban Development ("HUD") funds and could adequately fund the project. Based upon that representation, Universal rescinded its work-stoppage notice and urged its subcontractors to return to work. But Universal continued to seek written confirmation that funding was available.
 {¶ 4} PAH knew that the HUD funds were not forthcoming. PAH endeavored to obtain substitute HUD funding but was not successful. Universal continued working for five more months until April 1999. When PAH was unable to make several payments, Universal stopped work.
 {¶ 5} Pursuant to the terms of the contract, in April 1999, Universal filed a claim with the American Arbitration Association alleging that PAH had breached its contractual duty to provide information that sufficient funds were available and seeking money damages. Universal raised no claims of negligent misrepresentation, and Aug was not made a party to the arbitration.
 {¶ 6} On July 5, 2000, the arbitration panel awarded Universal and its subcontractors a $4,379,721.10 judgment against PAH. In its detailed arbitration award, the panel found "in favor of Universal against PAH for PAH's breach of contract for its own conduct and that of its representatives, including the conduct of [the project architects]." In the eight-page decision, the panel awarded Universal a total of $2,044,153 for the unpaid balance on work in progress, labor-escalation costs, extended general conditions, extended supervision, lost productivity, unabsorbed office overhead, and demobilization costs. The remaining amounts were awarded to subcontractors Geiler ($902,628), BJ Jacobs ($54,132), Zero-Breeze ($119,563), S/C Shaw ($5,157), Mayers Electric ($274,744), Ooten Interior Systems ($99,031), OK Interiors ($120,778), O'Rourke Construction ($17,380), and Wise Construction ($700,459). On September 22, 2000, in the consolidated cases numbered A-9905309 and A-0004161, the Hamilton County Common Pleas Court confirmed the arbitration award and entered a judgment against PAH subject to 10% interest per annum until payment was made in full.
 {¶ 7} According to the affidavit filed in this case by Aug, PAH was unable to fully satisfy the judgment on the breach-of-contract claim. On May 31, 2001, Universal filed this action, alleging that Aug had negligently misrepresented PAH's ability to fund the project and that Universal had relied upon that representation to its detriment by returning to work. Universal sought $4,516,700 in compensatory damages from Aug. Following the denial of Aug's pretrial motions, a jury awarded Universal $467,154 in damages. Aug moved for judgment notwithstanding the verdict pursuant to Civ.R. 50(B). In its well-reasoned 11-page decision, the trial court granted the motion, ruling that while a corporate officer could generally be held liable for torts committed in the course of business, Universal could not proceed in a separate action against Aug for negligent misrepresentation when "[t]he contractual duty of PAH in the arbitration process and the claimed tortuous [sic] conduct of Aug * * * involve[d] the identical duty to provide [correct funding information]."
 {¶ 8} When Universal filed this appeal, it was consolidated, for purposes of argument only, with the appeal of a declaratory-judgment action concerning whether Aug would be covered under PAH's directors-and-officers liability policy if Universal obtained a judgment against her.
 STANDARD OF REVIEW {¶ 9} This court's review of the trial court's resolution of Aug's Civ.R. 50(B) JNOV motion involves a question of law and "not questions of fact, although evidence must be reviewed and considered." Meyers v. HotBagels Factory (1999), 131 Ohio App.3d 82, 92, 721 N.E.2d 1068; see, also, Ruta v. Breckenridge-Remy (1982), 69 Ohio St.2d 66, 430 N.E.2d 935, paragraph one of the syllabus. In reviewing such a ruling, "the court, without weighing the evidence, must construe the evidence most strongly in favor of the nonmovant, and determine whether reasonable minds can only conclude in favor of the movant. If the evidence admits of only one conclusion, the motion is properly granted." Midland Enters. v. St. PaulFire Marine Ins. Co. (2000), 139 Ohio App.3d 650, 655,745 N.E.2d 455; see Civ.R. 50(B); Chemical Bank of New York v. Neman
(1990), 52 Ohio St.3d 204, 207, 556 N.E.2d 490.
 THE NEGLIGENT-MISREPRESENTATION CLAIM {¶ 10} The traditional common law of tort provided a remedy only for negligently inflicted physical harm to persons or property. "`[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.
(1989), 42 Ohio St.3d 40, 44-45, 537 N.E. 2d 624, quoting NebraskaInnKeepers, Inc. v. Pittsburgh-Des Moines Corp. (Iowa 1984),345 N.W.2d 124, 126. Economic or pecuniary losses, such as lost wages and profits, were not generally recoverable in actions sounding in tort. But they were available in suits for breach of contract that allocated lost-expectation interests. See, e.g., Floor Craft Floor Covering, Inc.v. Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, 17,560 N.E.2d 206.
 The Negligent-Misrepresentation Exception {¶ 11} Responding to modern economic realities, Ohio has recognized one of the exceptions to the economic-loss rule: the tort of negligent misrepresentation as defined in 3 Restatement of the Law 2d, Torts (1965), Section 552. See Haddon View Invest. Co. v. Coopers Lybrand
(1982), 70 Ohio St.2d 154, 156, 436 N.E.2d 212; see, also, Gutter v. DowJones, Inc. (1986), 22 Ohio St.3d 286, 490 N.E.2d 898. The tort provides that "`one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest,supplies false information for the guidance of others in their business transactions, is subject to liability for economic loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" Delman v. Cleveland Heights (1989), 41 Ohio St.3d 1, 4,534 N.E.2d 835, quoting 3 Restatement of the Law 2d, Torts (1965) 126-127, Section 552 (emphasis added). Thus, under Ohio law, an injured plaintiff may seek damages from a supplier of information who negligently supplies false information for the guidance of others who justifiably rely on the information. See Geyer, Miglets, and Rowley, Civil Liability and Remedies in Ohio Securities Transactions (2002), 70 U.Cin.L.Rev. 939, 980-981.
 {¶ 12} In Haddon View, the court reviewed the tort claims for economic damages brought by limited partners who had detrimentally relied upon representations an accounting firm had made to its client, their limited partnership. The individual partners were not in privity with the accounting firm. The court nonetheless held that the accounting firm could be liable to a third party for professional negligence when that third party was a member of a limited class of plaintiffs whose reliance on the firm's representation was specifically foreseen. See70 Ohio St.2d 154, 436 N.E.2d 212, syllabus. The court adopted the Section 552 rationale, noting that "[t]o require a plaintiff in such a situation to be in privity with the defendant-accountant ignores the modern verity that accountants make reports on which people other than their clients foreseeably rely in the ordinary course of business." See id. at 157, 436 N.E.2d 212.
 {¶ 13} In resolving negligent-misrepresentation cases, Ohio courts have eschewed a bright-line rule on when to permit recovery. Plaintiffs, including those not in privity with the information provider, have most often raised negligent-misrepresentation claims where a fiduciary or fiduciary-like situation has existed between the information provider and the plaintiff, such as cases involving accountants, appraisers, architects, and bankers. See McCarthy, Lebit, Crystal Haiman Co.,L.P.A. v. First Union Management, Inc. (1993), 87 Ohio App.3d 613, 631,622 N.E.2d 1093 (listing Ohio negligent-misrepresentation cases); see, also, Duquesne Light Co. v. Westinghouse Elec. Corp. (C.A.3, 1995),66 F.3d 604, 620; Wolfson, Electronic Mass Information Providers and Section 552 of the Restatement (Second) of Torts: The First Amendment Casts a Long Shadow (1997), 29 Rutgers L.J. 67, 77.
 A Special Duty for Tort Recovery {¶ 14} Where negligent-misrepresentation claims have been recognized, the courts have emphasized the existence of a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. See, e.g., HaddonView Invest. Co. v. Coopers Lybrand, 70 Ohio St.2d 156, 436 N.E.2d 212;Delman v. Cleveland Heights, 41 Ohio St.3d 1, 4, 534 N.E.2d 835;McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First UnionManagement, Inc., 87 Ohio App.3d 613, 622 N.E.2d 1093 (Eighth Appellate District).
 {¶ 15} In Textron Financial Corp. v. Nationwide Mutual Insurance Co.
(1996), 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, a corporation filed a suit against its insurance company alleging breach of contract, unjust enrichment, fraud, and negligent misrepresentation. The corporation contended that the insurance company had breached a master lease agreement for a computer system by subleasing the computer and altering the equipment. The Ninth Appellate District denied recovery on the negligentmisrepresentation claim because such a recovery would have been permitted "only if the breaching party [had] breache[d] a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." Id.
 The Duty in Arms'-Length Transactions {¶ 16} In negligent-misrepresentation claims, the scope of the special duty and the scope of the permissible recovery will vary on a case-by-case basis. Where the relationship between the plaintiff and the party negligently providing information is fiduciary-like, the information provider owes a higher duty of care, even to those parties not in privity with it. See, e.g., Haddon View Invest. Co. v. Coopers Lybrand,70 Ohio St.2d 156, 436 N.E.2d 212.
 {¶ 17} At the other end of the spectrum are duties imposed in relationships involving business transactions negotiated at arms' length by sophisticated parties to further their own economic interests. Some jurisdictions that recognize the negligentmisrepresentation tort do not permit recovery when the negligently provided false information has been conveyed in the course of a contractual relationship. See Fireman's FundIns. Co. v. SEC Donohue, Inc. (1997), 176 Ill.2d 160, 167-168,679 N.E.2d 1197. Others severely limit tort recovery between parties bound by a contract. See, e.g., Duquesne Light Co. v. Westinghouse Elec.Corp., 66 F.3d at 612 (applying Pennsylvania law); Bailey Farms, Inc. v. Nor-Am Chem. Co. (C.A.6, 1994), 27 F.3d 188, 191 (applying Michigan law); A.T. Kearney, Inc. v. Internatl. Business Machines Corp. (C.A.9, 1995), 73 F.3d 238, 242 (applying Oregon law); Berschauer/PhillipsConstr. Co. v. Seattle Sch. Dist. No. 1 (1994), 124 Wash.2d 816, 828,881 P.2d 986.
 {¶ 18} No Ohio court has denied the right of parties in privity to bring negligentmisrepresentation claims. See McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Management, Inc., 87 Ohio App.3d 613,634, 622 N.E.2d 1093. But Ohio courts have limited the ability to bring a negligent-misrepresentation tort claim where a contract exists between business entities. See Textron Financial Corp. v. Nationwide MutualInsurance Co., 115 Ohio App.3d 137, 684 N.E.2d 1261.
 {¶ 19} In Floor Craft Floor Covering, Inc. v. Parma Community Gen.Hosp. Assn., 54 Ohio St. 3d 1, 560 N.E.2d 206, syllabus, the Ohio Supreme Court held that "in the absence of privity of contract no cause of action exists in tort [for a contractor] to recover economic damages against design professionals involved in drafting plans and specifications." The court has since noted that "Floor Craft, * * * was concerned that by asserting a tort claim, the contractor may try to `avoid its contract terms.' * * * Thus, the one point on which the majority and dissenting opinions in Floor Craft agree is that the contractor should not be permitted to circumvent its contract terms by virtue of labeling the action a tort." Foster Wheeler Enviresponse v. Franklin Cty. ConventionFacilities Auth., 78 Ohio St.3d 353, 367, 1997-Ohio-202, 678 N.E.2d 519.
 {¶ 20} "The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." Floor CraftFloor Covering, Inc. v. Parma Community Gen. Hosp. Assn.,54 Ohio St.3d at 7, 560 N.E.2d 206. Where the parties are sophisticated business entities that have contracted to protect against potential economic loss, contract principles override the tort principles embodied in Section 552, and economic damages are not recoverable except as provided in the contract or by the rules of contract interpretation. To conclude otherwise would unduly impair the parties' ability to allocate risks and duties by contract. See Berschauer/Phillips Constr. Co. v.Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 828, 881 P.2d 986.
 {¶ 21} While by its terms the tort of negligent misrepresentation applies to "one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information," permitting a party who has a contractually defined right to recover economic damages to proceed in a separate action against a corporate officer who has provided false information would similarly undermine the ability of the parties to allocate risks and duties by contract. While an injured party may proceed in the alternative, raising breach of contract and negligent misrepresentation against both an officer and the corporation in an action naming both as defendants, the existence of a recovery for the breach of contract "excludes the opportunity to present the same case as a tort claim." Textron Financial Corp. v. Nationwide Mutual InsuranceCo., 115 Ohio App.3d at 151, 684 N.E.2d 1261.
 APPLICATION {¶ 22} With the facts in this case construed most strongly in favor of Universal, the nonmoving party, it is clear that Universal and PAH entered into a construction agreement that, in section 3.11, specifically obligated PAH to provide economic information to Universal. In November or December 1998, Aug, on behalf of PAH, negligently informed Universal that sufficient funding was available. It was not. After continuing to perform despite PAH's failure to affirmatively respond to its repeated requests for written assurance that funding was available, Universal brought its breach-of-contract claim to arbitration. Universal was awarded over $2 million in contract damages plus interest. Aug was not a party to the arbitration, and Universal only raised claims that PAH had breached the December 1996 agreement.
 {¶ 23} Moreover, as the trial court noted, any damages that could have been awarded by the jury on Universal's negligent-misrepresentation claim would have duplicated those damages identified and awarded in the arbitration process. The complaint in this case specifically identified the economic-loss damages being sought as "several million dollars of material and labor provided to PAH for which [Universal] was never paid." This was precisely the injury — economic loss for PAH's breach of contract — that Universal had received compensation for in the arbitration proceeding.
 {¶ 24} As reasonable minds could have only concluded in favor of Aug on her motion for JNOV, the assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Winkler, P.J., and Hildebrandt, J., concur.